UNITED  STATES  DISTRICT  COURT
WESTERN  DISTRICT  OF  TEXAS
**AUSTIN  DIVISION**

| | | |
|---|---|---|
| INSTITUTE FOR CREATION RESEARCH | § | CIVIL  ACTION |
| GRADUATE SCHOOL,   plaintiff, | § | |
| v. | § | **No. 1:09-CV-382 SS** |
| TEXAS HIGHER EDUCATION | § | |
| COORDINATING BOARD, a Texas state agency; | § | (a/k/a A-09-CA-382-SS) |
| et al., defendants. | | |

**PLAINTIFF'S  2nd AMENDED  COMPLAINT,**
(AMENDED  PER  ORDER  OF  7-29-2007)

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Comes now plaintiff, **Institute for Creation Research Graduate School ("ICRGS")**, an

unincorporated educational ministry unit of The Institute for Creation Research, a California not-

for-profit corporation, and hereby seeks to comply with this Court's Order (of 7-29-2009;

entered 7-31-2009), via this "second amended complaint" (following removal from state court

per 28 U.S.C. §§ 1441–1446), to conform to this Court's application of Fed.R.Civ.P. Rule 8.

Accordingly, plaintiff thus respectfully (and in good faith) requests relief herein as follows:

## I.  INTRODUCTION,  JURISDICTION,  PARTIES,  VENUE,  etc.

**1.** This civil rights case, for injunctive and declaratory relief (not damages) was originally

filed in Travis County's 126th District Court as Cause # D-1-GN-09-001239, and was removed

by defendants on May 13th, 2009.  Although plaintiff gently objects to the repleading orders

herein, *if needed to save prior notice-pleading content*, plaintiff hereby complies therewith.[1]

**2.** There are still 2 state statutes that are potentially dispositive (in a manner favorable to

ICGS) as to issues of "first impression", so this Court needs to make some *Erie v. Tompkins*

---

[1] Frugal usage of citations are provided herein, as part of a good-faith try to comply with the
removal  Court's mandated limit of 20 pages (double-spaced)  for ICRGS's amended complaint.

guesses thereon.  Because the Texas Attorney General has waived sovereign immunity herein, due to this case's voluntary removal (under *Lapides v. Bd. of Regents of the Univ. System of Colorado*, 535 U.S. 613 (2002)), this Court's ruling on those "first impression" Texas statute issues should be binding on all of the defendants, including the THECB (a Texas state agency).

**3.**     The contents of ICRGS's petition (in Docket # 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) pending in the State Office of Administrative Hearings (SOAH) contain no "surprise" herein, so that SOAH petition is hereby incorporated by reference as if attached hereto.  Likewise, the contents of the Original Petition in Travis County's 126th District Court (filed as Cause # D-1-GN-09-001239) is likewise incorporated by reference.   With those content references assumed, plaintiff now presents a 2nd condensed version of its Petition, in order to comply with this Court's repleading orders herein.

**4.**     Plaintiff **("ICRGS")** is an unincorporated educational ministry unit of The Institute for Creation Research, a California nonprofit corporation, a graduate school operating since 1981, offering *M.S.* degrees (per California law) from a Biblical scientific creationist viewpoint.

**5.**     Defendant Texas Higher Education Coordinating Board **("THECB")** is a state agency.

**6.**     The other defendants, who are sued only in their *official capacities*, are individuals who acted under color of state law, via their official capacities at the THECB, namely: Raymund Paredes ("Paredes"), Lyn Bracewell Philips ("Philips"), Joe B. Hinton ("Hinton"), Elaine Mendoza ("Mendoza"), Laurie Bricker ("Bricker"), A. W. ("Whit") Riter III, Brenda Pejovich ("Pejovich"), and Robert Shephard ("Shephard").  Paredes is the THECB's Commissioner.  The others individual defendants actively participated in THECB proceedings, under color of state law, during April of 2008, of which THECB proceedings ICRGS now complains to this Court.

**7.**     Venue herein is based upon defendants' removal of this lawsuit to this Court.  (All of the defendants were timely served with process and timely answered in D-1-GN-09-001239.)

## II.  COMMON NUCLEUS OF FACTS RELATED TO LEGAL CLAIMS

**8.**       This controversy arises from ICRGS's request for a government license, specifically, for

a license ("Certificate of Authority") to offer its 27+-year-old graduate school California-based

program (which now consists of a *Master of Science* degree, with a major in **Science**

**Education**, and minor options in **Biology, Geology, Astro/geophysics,** or **General Science**) in

and from Texas.   That request was disapproved, rejected, and denied by defendants on April 24th

of 2008, in conjunction with 2 meetings (and related documents) that showed defendants' public

disapproval of ICRGS's institutional viewpoint (e.g., on the falsity of Darwin's evolution theory

and the universe's age, as well as a variety of related religious and scientific topics).   The

THECB's administrative process included Dallas campus site visits, plus documentation of the

*M.S.* program, followed by climactic events at THECB's building on April 23rd and 24th, 2008.

**9.**       The official THECB decision was formally voted on and announced publicly (by the

defendants) on **Thursday, April 24th, 2008.**   It endorsed the Commissioner's recommendation

formally read into the record (*the previous day*) during a joint meeting of 2 THECB committees.

That recommendation, in turn, mostly relied on advice from 2 *ex parte* advisory "panel"

committees (of "scientists and science educators"), the composition of both such committees

failing the "balanced representation" requirement of Texas Government Code § 2110.002).

**10.**       In ICRGS's application, as amended (by its Progress Report of March 2008), for a license

(under what is now THECB Rule § 7.6) to grant a Master of Science degree in Science

Education, ICRGS demonstrated, by documentation (and otherwise), that ICRGS met or

exceeded all applicable THECB (now Rule § 7.8) "Standards of Certificates of Authority".

**11.**       Defendants denied ICRGS the license that it applied for, unjustly, based on THECB's

regulatory standards 7.7**(12)(A)** ("e.g., "adequately cover the breadth of knowledge") and

7.7(12)(D) ("appropriate to the curriculum"), both of which standards are vague and/or overbroad, such that a law-abiding person (especially one who assumes the American tradition of academic freedom) cannot confidently know the applicational bounds of those 2 standards. Also, those vague and overbroad regulatory standards exemplify "prior restraint" censorship. Moreover, even if not vague, defendants misapplied those "breadth" and "appropriate" norms.

**12.**      Within an administrative law context Plaintiff has repeatedly protested and still protests various ongoing violations of federal Due Process and Equal Protection, *inter alia*, per Title 19, Tex. Admin. Code, Part 1, Chapter 1, Subchapter B, **Rule § 1.23**, as such is became procedurally applicable via Title 19, Tex. Admin. Code, Part 1, Chapter 7, Subchapter A, **Rule § 7.6(d)(7)** ("Administrative Procedures related to Certification of Nonexempt Institutions").

**13.**      This THECB process was protested via ICRGS's SOAH petition, formerly posted on the THECB's website ("SOAH petition"), a document of 755 pages including its appendices A-Z, which SOAH petition's contents is incorporated herein by reference as if attached thereto.

**14.**      ICRGS has attempted to use the administrative remedies process (including a mediation conducted by a SOAH ALJ) to solve the civil rights problems of this case, but a critical Statute of Limitations forced ICRGS to commence an action prior to the complete exhaustion of that administrative appeal process.  Also, some relief that ICRGS needs (and its entitled to) cannot be provided by SOAH, so waiting for any SOAH-based relief beyond the Statute of Limitations deadline (for filing this lawsuit) would be futile.  Since 42 U.S.C. § 1983 (which applies to all defendants except THECB) "adopts" the statute of limitations deadline of "comparable" state law, the § 1983 deadline for requesting injunctive and declaratory relief (neither of which is available via SOAH's administrative remedies process), herein, is the 1-year deadline of Tex. Civ. Prac. & Rems. Code § 110.007 (i.e., 1 year from April 23, 2008).

**15.** In sum, to the extent not legally "futile", ICRGS has tried to exhaust its administrative remedies, i.e., as such exist, but abating this case would only delay equitable relief for ICRGS.

**16.** Meanwhile, ICRGS's 1st and 14th Amendments-based liberties are infringed, because issuing an *M.S.* degree is an academic assessment in the form of an "ultimate opinion" (about who is has learned "Science Education" as ICRGS teaches it, and has thus earned the recognition of ICRGS's *M.S.* degree). If ICRGS expresses that "ultimate [academic] opinion" about Texas residents, ICRGS does so at its peril. Why? Because the expression of ICERGS's "ultimate [academic] opinion" about who has earned the right to be recognized as completing ICRGS's *M.S.* program, in Texas, is now a criminalized form of "ultimate [academic] opinion" expression, because THECB (via the concerted actions of all of the defendants, under color of state law) has denied ICRGS a license to offer its *M.S.* program to Texas residents, and so ICRGS is now impaired from freely advertising its *M.S.* program to Texans (i.e., because ICRGS faces the threat of penal and civil sanctions, if it acts apart from THECB's approval).

**17.** Accordingly, since April 24th of 2008, ICRGS is faced with a legal dilemma, with both choices requiring ICRGS to experience unjustly discriminatory consequences: (a) ICRGS could **actively stand** on its 1st (and 14th) Amendment rights and continue to offer its academic programs unto Texas residents, and then be (unjustly) prosecuted for offering what the THECB and defendants (acting under color of state law) unjustly characterize as a "fraudulent or substandard" degree program, via legal process that potential implicates Texas Deceptive Trade Practices – Consumer Protection Act jeopardies (including prosecution-of-crime jeopardies); or (b) *alternatively,* ICRGS could **passively surrender** its 1st (and 14th) Amendment rights and permanently stop offering its academic programs to Texas residents, to avoid being (unjustly) prosecuted for offering what THECB and the other defendants (acting under color of state law)

would characterize as a "fraudulent or substandard" degree program, via legal proceedings that potentially implicate Texas Deceptive Trade Practices – Consumer Protection Act jeopardies.

**18.**     But ICRGS need not risk administrative fines, civil liability, or criminal prosecution to seek to preserve its academic freedom (and other) rights, because declaratory relief is proper herein. *See* MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-129 (2007).  In light of the Commissioner's (and thus THECB's) prior willingness,[2] as recently as August 2007, to persecute Tyndale Theological Seminary, Southern Bible Institute, and Hispanic Bible Institute (all Bible-based Protestant evangelical educational institutions), ICRGS reasonably concluded that the Commissioner (in concert with the other defendants, under color of state law) is also likely to use color of state law to prosecute ICRGS, if ICRGS advertizes or offers its *M.S.* degree program to Texas residents.   If academic politics is not herein restrained by the rule of law, ICRGS will suffer ongoing persecution for its educational viewpoint, as it previously did in California. *See* ICR Graduate School v. Honig, 758 F. Supp. 1350, 1356, 66 Educ. Law Reptr. (S.D.Cal. 1991).

**19.**     Accordingly, ICRGS ceased admitting Texas residents into its *M.S.* program (as shown by the Declaration of Lawrence Ford, filed in the related Dallas federal district court litigation). Likewise, ICRGS has (since April 2008) ceased advertizing (from Texas) that it is willing to admit Texas residents into its 27+-year-old *M.S.* program.   Prospective Texas residents who have been turned away (from ICRGS), due to the defendants' official actions in declaring ICRGS's M.S. program as "fraudulent or substandard" (and unauthorized in Texas, and thus illegal if offered to Texas residents), include:  Kathy Cloud, Lawrence Ledbetter, Bob Sands, Michael Wofford, Michal Sorrells, David Son, Melissa Travis, and Dr. Javier Campos.

---

[2] See HEB Ministries, Inc. v. THECB & Comm'r Pardes, 235 S.W.3d 627, 226 Educ. Law Reptr. 348 (2007), substantively reversing 114 S.W.3d 117 (Tex. App. – Austin 2003).

**20.**    ICRGS's Bible-informed "creationist tenets"-based institutional viewpoint is neither an exotic (like neo-Odinism) nor recently invented (like marijuana cults).  ICRGS simply agrees with the Holy Bible-transmitted view of the apostle Paul, who wrote that the creation so clearly shows proof of God's Creatorship, that to reject that evidence is to do so "without excuse".[3]

**21.**    The individual defendants, acting in their official capacities under color of state law) have publicly disagreed with ICRGS's academic viewpoint, by endorsing the Commissioner's opinion that Earth's origin is traceable to a cosmic "Big Bang" some "14 billion years" ago.  *But Paredes' "Big Bang" opinion is not a matter of education law in Texas, to be authoritatively and coercively imposed on any private institution that seeks to teach graduate-level "science education".* Similarly, defendants (under color of state law, acting via THECB) do **not** have the legal right, constitutionally speaking, to brand, as if with a "scarlet letter", ICRGS's creation science viewpoint as "fraudulent or substandard", when doing so requires the THECB (as a state agency regulating government spending on higher education) to publicly and officially endorse Paredes' (or Skoog's) personal beliefs about evolutionary processes or an un-witnessed "Big Bang" cosmogony.    Moreover, the Texas Supreme Court has ruled that no Texas state governmental claim (or conclusion) of "fraud" can be officially made or decreed, if that value-judgment depends upon evaluating the *truth* or legitimacy of a particular religious opinion.[4]

---

[3] *See* Romans 1:18—21, esp. 1:20 ("For the invisible things of Him from the creation of the world are clearly seen, being understood by the things that are made, even His eternal power and Godhead; so that they are without excuse").  For ICRGS's institutional viewpoint on this issue, see the footnote to Romans 1:20 in the *Defender's Study Bible*, annotated by ICR's founder, Dr. Henry Morris (at page 1231, 1995 edition), saying: "Those who do not see the eternal power and nature of God in the creation, on the other hand, have no apologetic.  They are 'without excuse' (*anapologetos*) if they do not believe in our Creator God.   The evidence is all around them."

[4] Tilton v. Marshall, 925 S.W.3d 672, 678—679 (Tex. 1996) (**no legal claim of "fraud" can be made, by the state, if it relies on the state evaluating the legitimacy of a *religious opinion*).**

---

**22.**   In addition to ICRGS institutionally affirming a "young earth", as an academic viewpoint (consistent with catastrophist geology evidences such as Mount St Helens eruption in 1980, etc.), ICRGS also affirms Earth's young age as a matter of institutional religious viewpoint.  That the triune God of the Bible, acting through Christ, created the cosmos slightly more than 6,000 years ago, is a sincerely-held institutional religious viewpoint of ICRGS, qualifying how ICRGS teaches science and science education. That *private* sector religious belief about Christ (which defendants have now publicly disapproved and disfavored under color of Texas state law) is a core component of ICRGS's openly affirmed Biblical creationism viewpoint "tenets" (which creationist tenets have been posted on www.icr.org at all times material to this litigation).

**23.**   THECB documents (seen in context) show that ICRGS's institutional viewpoint is, for the most part, why ICRGS's application was disapproved, rejected, and denied by defendants.

**24.**   Similar religious-viewpoint-hostile reactions were publicly echoed in Ass't Comm'r Joe Stafford's remarks on April 23rd, 2008; these were publicly endorsed and re-echoed by Paredes that day.  The next day (April 24th, 2008), at the THECB board meeting, the same viewpoint discrimination was unmitigated, with a "rubber-stamp" ratification by the voting THECB board member defendants (while ICRGS representatives were then explicitly muzzled).

**25.**   Notwithstanding Commissioner Paredes personal view of the universe's origins, ICRGS holds its institutional academic viewpoint in good faith, buttressed by many scientific evidences.

**26.**   Furthermore, merely "passing the buck" from the Commissioner to a few evolutionist scientists (on Paredes' *ex parte* ad hoc advisory committee) likewise fails to convert the age-of-the-earth controversy into a government policy mandate.  The main problem, here, is viewpoint discrimination:  using the power of government, including government gate-keeping of the

academic market's "forum", to disfavor creation science as an academic viewpoint.  Although educational liberty (a/k/a "academic freedom") does not include or justify a "sham" (such as a "diploma mill"), ICRGS claims that a formal education is mostly a defined and documented program of <u>teaching</u>, and an integral part of any such formal teaching (especially a higher education program of study) is the teacher's <u>assessment</u> of the individual learner's mastery of the program-defined teachings.   In other words, ICRGS claims that the process of "teaching" is not complete without meaningful "assessment" of its learners' learning, such as the ultimate assessment, ICRGS's faculty's decision to award an academic degree, to denote a very specific and satisfactory completion of an educational program of study.  ICRGS is now cheated from exercising that academic speech liberty, as a matter of THECB-mandated "prior restraint".

<u>27.</u>     ICRGS claims, in good faith, <u>institutional academic freedom</u>, the hallmark of Anglo-American university traditions, including the right to choose (in good faith) an appropriate college curriculum for a specific degree program.   In prior filings ICRGS gave illustrations to explain ICRGS's claim on this point, but due to brevity constraints those illustrations are now only noted by allusion to the SOAH Petition pages 24-29.   Accordingly, ICRGS seeks declaratory relief that it may, as a matter of **academic freedom** (including its "add-on" **institutional viewpoint** component for the *M.S.* program), institutionally opine (as a matter of institutional academic speech), -- that a given graduate student is ***worthy*** to be recognized as having earned ICRGS's "Master of Science" in "Science Education" degree,  --  in academic situations where and when ICRGS's faculty are, based on pre-written and extensive[5] educational criteria, satisfied that the graduate student has adequately learned "science education", due to a

---

[5] "Extensive" here means 1 or 2 academic "years" worth of master's-level science education, based on a matriculation that included a good-faith-based set of relevant academic prerequisites.

student having successfully completed a sufficient number of courses selected from the ICRGS course list (which list appears on pages 14-15 of ICRGS's 1st Amended Complaint), which ICRGS *M.S.* curriculum (of those courses) was timely provided to THECB during March 2008.

**28.**    Unjustly, defendants (as officials of THECB) have effectively treated ICRGS's *M.S.* curriculum as a *non-*"science education" curriculum, due to ICR's openly creationist viewpoint.

**29.**    Moreover, the defendants' actions, under color of state law, have wrongfully interfered with ICRGS's institutional academic freedoms in a manner that encroaches on ICRGS's **"freedom of association"** rights, including but not limited to ICRGS's rights to express its association with a non-SACS accrediting agency (e.g., TRACS, DETC, ABHE, etc.). ICRGS is not here claiming to "represent" the freedom-of-association rights of others: ICRGS is claiming that its own freedom to associate with "kindred spirit" persons (be they prospective students or faculty or schools that have or seek accreditation other than SACS) is materially inhibited by the *de facto* monopoly produced by the THECB's discriminatory policy of disapproving the academic liberty (in Texas) to speak and publish as a science-degree-offering-and-granting private college, simply because defendants disapprove of ICRGS's creationist viewpoint. Accordingly, the monopolistic realities of the science education market, in Texas (and in America generally) limit creationist learners to science education programs at evolutionist grad schools, because ICRGS is the only grad school with a "YEC" science education *M.S.* program.

**30.**    ICRGS claims that a state government, exercising its conditional "purchaser" rights under a constitutional or statutory *spending clause* provision, may condition or otherwise influence private institutions' academic freedoms, as any educational consumer may, by choosing to buy (i.e., approve for government grants and/or loan-based funding) one type of academic program over another.   But ICRGS also claims that it is not (nor has it ever been) the legal role of the

THECB to regulate a *private* college or accrediting entity, pursuant to any powers delegated via the Texas Education Code (in light of its explicit application parameters defined in its § 1.001(a)), *unless* the Texas government directly funds that school or accreditor. In other words, ICRGS claims that it, the THECB has no constitutional "business" interfering with the "academic speech" of ICRGS as a private institution (or any private accreditor THECB may seeks to advertize accreditation through),   --   unless there really is a harmful "sham" on the educational market, with any such "sham" to be shown by clear and convincing *objective* criteria **apart from a "prior restraint" censorship program** (that shifts the state's usual proof burden).

**31.**    While defendants committed viewpoint discrimination against ICRGS, in April 2008, they applied a wrong legal standard regarding how the law treats creation-vs.-evolution controversies.  Clarity is needed when considering the potential relevance of federal case law involving the promotion of creationism (or secularized "intelligent design" science) as content for public school curricula and/or in public school textbook disclaimers. ICRGS's case is **not** a controversy involving any public school "entanglements".  ICRGS is not seeking to impose its creationist viewpoint distinctives on any *public* school or college.  (Defendants' advisor, whom they rubber-stamped, Dr. Skoog, found fault with ICRGS's curriculum due to its being, in his public-school-fixated opinion, curriculum unacceptable for any Texas **public** university.)

**32.**    This case is *not* about granting master's degrees to *undergraduate* students who only study low-level, memorization-based science courses for a year or two.  ICRGS is not a "*degree mill*" for "fraudulent or substandard" degrees, nor should it be deemed such just because its faculty don't "believe in their heart" that naturalistic evolution is true.  It should suffice that ICRGS has set forth relevant curriculum and qualified instructors, who are prepared to transmit educational content in good faith unto qualified students who voluntarily seek to master that

educational content from a conspicuously creationist graduate school. ICRGS, since 1981, has practiced educational quality, academic rigor, quantitative analysis, empirical research (including field studies, controlled experiments, and "high-tech" investigation of nature, e.g. scanning electron microscopy, helicopter investigations of Mount St Helens, etc.), forensic logic and analysis, within good-faith academic freedom parameters, and has done so all from a Biblical and scientific creationism viewpoint. Because ICRGS has set forth relevant curriculum and qualified instructors, prepared to transmit educational content to qualified students who voluntarily seek to master that educational content from a conspicuously creationist graduate school, that should suffice, in Texas, regardless of the uncomfortable fact that ICRGS affirms and teaches a *minority* viewpoint about cosmic and human origins and the worldwide Flood.

**33.**   ICRGS claims that obligatory "accommodation", to religious viewpoint liberties, is mandated by Texas statutory law, e.g., the *Texas Religious Freedom Restoration Act of 1999* ("Texas RFRA"), codified at Tex. Civ. Prac. & Rems. Code, Chapter 110. Defendants, during and after April 2008, violated the Texas RFRA, because Texas government agencies, and their agents (including the individual defendants), by failing to avoid substantially burdening ICRGS's free exercise of religion, because defendants actions were not "in furtherance of a compelling governmental interest". Also, defendants' imposed burdens on ICRGS's religious liberty were not the "least restrictive means" of furthering any legitimate state interest" (*See* id., § 110.003). Also, defendants (under color of state law), by acts during 2008, and by their ongoing failure to act remedially thereafter, have violated and are violating this aspect of the Texas RFRA.

**34.**   Also, notwithstanding the authoritative precedent for preferring "duty-to-save" statute interpretations that avoid unconstitutional results, defendants has chosen to interpret and apply at least 3 Texas statutes in ways that unconstitutionally infringe ICRGS's viewpoint freedoms.

**35.**    It is <u>untrue</u> that THECB has a "compelling governmental interest" to defend Darwin's errors (or the idea that Earth and all material existence derives from an accidental "Big Bang" which occurred 14,000,000,000 years ago), so there is no excuse for the government-imposed burdens that defendants (acting under color of state law) have imposed upon ICRGS as a provider of graduate-level science education from a Biblical creationist viewpoint.

**36.**    Despite the above-cited examples of creation science research and scholarship, which obviously demonstrates serious "science" usable for "science education", the defendants treated ICRGS as if it were merely a religious studies operation spiced by a bit of science here and there, and defendants provided ICRGS with no meaningful 1st Amendment-oriented accommodation.

**37.**    The Texas Constitution,[6] directly, and the U.S. Constitution,[7] indirectly, both oppose the kind of monopoly power which the evolutionary establishment has in Texas (and elsewhere), over postsecondary science education.   That monopoly is enabled by defendants' color-of-state-law misdeeds, and *interferes with interstate commerce*, thwarting ICRGS's free-speech liberty.

**38.**    In this case <u>science education speech</u> is being monopolized, despite the 1st Amendment (free speech, free press, free exercise of religion), and despite the **"opinions on any subject"** clause in Texas Constitution Article I, § 8. Also, defendants have misused their state offices at the  THECB to rule as if THECB was the monopolistically *exclusive* <u>issuer</u> of science degrees (similar to how an English king or queen, historically, was the exclusive issuer of **knighthoods** and other merit-or-favor-based **"titles of nobility"**).  By monopolizing "science" and "science education", under threat of criminalizing the issuance of legitimately <u>earned</u> academic degrees, defendants have enabled the state to function like an exclusive franchisor of academic

---

[6] Texas Constitution, Article 1, § 26 ("perpetuities and monopolies ... shall never be allowed").

[7] U.S. Constttn., Article I, § 9 ("No Title of Nobility shall be granted by the United States...")

achievement "titles".  (This is quite different from certifying an occupation license, like a CPA.)
This chills opportunities for communication regarding academic achievements, even though a
private college's assessment of a student (in the form of an earned degree) cannot be reasonably
interpreted as an assessment of the state government.  *See* Peel, *supra*, 496 U.S. at 103-104; 110
S.Ct. at 2289 (noticing **"the consuming public understands that licenses ... to convey an
educational degree ... are issued by private organizations"** and do not **"misleadingly"** imply
state endorsement).  Likewise, in academic contexts (where reasonable minds could differ in
good faith), a student's entitlement to a graduate science degree (as opposed to a "sham" or
"diploma mill" context), the First and Fourteenth Amendments do not allow  the State of Texas
have *de facto* "gate-keeping" veto-power over *all* science degree conferrals in the State of Texas.

**39.**     Though Texas statutes permit THECB to recognize accreditors besides SACS, THECB
has only authorized only SACS to offer master's-level science-ed degrees in Texas, giving
SACS-affiliated schools a science-ed monopoly.[8]  Also, defendants (under color of state law)
have favoritistically promoted SACS's monopoly in Texas, by saying that THECB would
condition ICRGS's academic speech exercise on ICRGS's willingness to seek accreditation from
the **Southern Association of Colleges and Schools** ("SACS"). This "chills" ICRGS academic
speech by barring ICRGS from advertizing its academic competence via potential accreditation
via Transnational Association of Christian Colleges & Schools ("TRACS", www.tracs.org ),
Distance Education Training Council ("DETC", www.detc.org ), and Association for Biblical
Higher Education ("ABHE", www.abhe.org ), even though TRACS, DETC, and ABHE are
approved by the U.S. Department of Education.    Also, this SACS favoritism "chills" ICRGS's
academic-market speech by barring ICRGS from offering its *M.S.* as an unaccredited program.

---

[8] See favoritistic treatment of SACS in Texas Education Code **§ 61.003(13) & § 61.003(15).**

## III.  SUBSTANTIVE FEDERAL  &  STATE  LAW  CLAIMS

**40.**     ICR (acting for and via its educational ministry unit ICRGS) respectfully requests relief against defendants (other than THECB) for past and ongoing injuries (caused by defendants' civil rights violations committed under color of state law), under the Civil Rights Act at **42 U.S.C. § 1983**, in conjunction with the federal *Declaratory Judgment Act*, to provide prospective remedies applicable to  the following "counts" of defendants' violations of ICRGS's rights:

(a)     **Count 1:**  infringing or "chilling" <u>ICRGS's "free speech" rights</u> (which are recognized by "incorporating" the 1st Amendment liberty norms into the 14th Amendment, and thus are applied to state governments), which include its right to institutionally express its academic and religious viewpoints apart from the Texas state government's public disapproval, disfavor, or persecution of ICRGS's viewpoint(s), including its right to express its good-faith academic assessments as earned *M.S.* degrees, apart from a Texas-state-favored monopoly that, ***in application***, interferes with interstate commerce, as it censors and bans ICRGS from advertizing any academic accreditation of its *M.S.* "science education" program, if any, unless that accreditation is through SACS (even if any such non-SACS accreditor is U.S. Department of Education-"approved");

(b)     **Count 2:**  infringing or "chilling" <u>ICRGS's "free press" rights</u>, by THECB using its licensing process as a "prior restraint" censorship control on ICRGS's *M.S.*-related academic catalog (and other paper and electronic publications) to Texas residents,[9] ***as opposed to*** THECB respecting **4th Amendment**-satisfying "probable cause" norms prior to depriving ICRGS of its freedom-of-the-press liberty to freely express its *M.S.*-related

---

[9] See <u>Freedman v. Md.</u>, 380 U.S. 51, 58 (1965) (noting "prior restraints" in a licensing program can be abused, so that government licensing becomes a form of "free speech"-squelching censorship), *quoted in* <u>Thomas v. Chicago Park District</u>, 534 U.S. 316, 320-322 (2002).

academic viewpoint (and science education program) unless and until it is proven (by a **Due Process** evidentiary hearing that requires a proper proof burden of THECB) that ICRGS is "guilty" of providing a bad-faith "diploma mill" quality of science education;

(c) <u>**Count 3:**</u> infringing <u>ICRGS's 14th Amendment **Due Process and Equal Protection** rights,</u> by THECB using arbitrary norms and procedures to deny ICRGS a license to which it was duly entitled (i.e., if THECB licensing regs had been applied justly).

<u>**41.**</u>    Under the Texas Constitution, ICRGS respectfully requests relief on these "counts":

(a) <u>**Count 4:**</u>    THECB's viewpoint discrimination deeds, including its "prior restraint" licensing program (if applied to non-recipients of Texas state funds) violates ICRGS's rights under Article 1, § 8 ("**liberty to speak, write or publish** his opinions on any subject" and "no law shall be passed curtailing **the liberty of speech or of the press**");

(b) <u>**Count 5:**</u>    THECB's viewpoint discrimination deeds violate ICRGS's rights to express "hybrid speech" as protected by Article 1's sections 6 (speech) and 8 (religion);

(c) <u>**Count 6:**</u>    THECB's disapproval and disfavoring of ICRGS's religious "tenets" viewpoint violates the <u>Equality Under the Law</u> clause protecting "creed" liberties (Article 1, § 3a), and wrongly involves THECB "control or interfere[nce] with **rights of conscience in matters of religion**", in violation of Texas Constitution Article 1, § 6;

(d) <u>**Count 7:**</u>    THECB's license denial, due to THECB disapproving ICRGS's academic viewpoint, violates the **Due Course of Law** provisions[10] of Article 1, § 13 and § 19, and also in light of the **Equality** provisions of Article 1, § 3 and § 3a, -- especially as the

---

[10] When interpreting and protecting ICRGS's **"Due Course of Law"** rights, ICRGS respectfully requests judicial consideration of the historical importance and policy of the Texas Constitution's expressed concern for <u>**reputational injury**</u> (Article 1, § 13), as well as the **Public Emoluments and Equal Rights** clauses (Article 1, § 3), and the **anti-monopoly policy** of Article 1, § 26.

defendants violated the "balanced representation" mandate of **Texas Government Code § 2110.002**, when forming and/or using an *ex parte* advisory committee against ICRGS;

**(e)**     **Count 8.**     Defendants' viewpoint discrimination deeds, which include defendants' failures to accommodate ICRGS's religious viewpoint, violated/s the Texas Religious Freedom Restoration Act of 1999, codified at § 110 of Tex. Civ. Prac. & Rems. Code, as such is interpreted in <u>Barr v. City of Sinton,</u> 2009 WL 1712798, 52 Tex. Supr. Ct. J. 871 (Tex. 2009); if Texas RFRA's phrase "district court" (as Tex. Civ. Prac. & Rems. Code § 110.005(c) uses that phrase) may include this <u>federal</u> district court, ICRGS requests relief herein under Texas RFRA;  --  but if not, this count should be *remanded* to state court;

**(f)**     **Count 9:**     THECB's religious viewpoint discrimination practices (and policy), especially THECB's failures to accommodate ICRGS's religious viewpoint, violated and violates the Texas anti-discrimination statute codified at **Tex. Civ. Prac. & Rems. Code, § 106,** which lists various "prohibited acts", including: (a)  in § 106.001(1), as including a refusal "to issue to the person a license, permit, or certificate"; (b) in § 106.001(4), as including a refusal "to permit the person to participate in a program owned, operated, or managed by or on behalf of the state or a political subdivision of the state"; (c) in § 106.001(5), as including a refusal "to grant a benefit to the person"; and (d) in § 106.001(6), as including a refusal "to impose an unreasonable burden on the person".

## IV.   RELIEF REQUESTED

WHEREFORE,  ICRGS hereby respectfully requests the following relief favoring ICRGS:

A.     <u>Injunctive Relief, including preliminary and permanent injunctive relief, including a structured injunction if just and proper,</u> including an injunction to require THECB's Commissioner, in his official capacity as the CEO of the THECB, in conjunction with the

defendants (or their successors-in-office) who can vote as THECB board members, to remedially mitigate and undo the defendants' prior viewpoint-discriminatory actions (which past acts continue to injure ICRGS) by promptly *approving and granting* ICRGS a Certificate of Authority to grant *Master of Science* degrees in *Science Education*, with optional minors in *Biology*, *Geology, Astro-geophysics,* and *General Science*; and

B.   <u>Declaratory Relief ancillary to the Injunctive Relief, pursuant to the Federal Declaratory Judgment Act (codified at 28 U.S.C. § 2201),</u> including a declaration that **Subchapter G of Chapter 61 of the Texas Education Code** is facially unconstitutionally restrictive, burdensome, vague, and/or overbroad, and is thus null and void,   ---   or, alternatively, that said Subchapter G of Chapter 61 has been *unconstitutionally applied* to ICRGS, due to Tex. Educ. Code § 1.001(a) or otherwise; moreover, in light of the "catch—all" regulatory power colorably provided by Texas Education Code § 61.3021, THECB's regulatory limitations (as well as any Texas statutes which attempt to delegate unto THECB regulatory powers via constitutionally improper delegations) should be quasi-judicially and/or judicially delineated, in order to quash the "chilling effect" of *ultra vires* regulatory activities against ICRS or the above-named non-SACS accreditors; furthermore, this need for declaratory relief should include remedial clarification regarding "academic speech" (subject to constitutional law requirements) as such is affected by Texas statutes that cross-reference the THECB's enforcement powers to "deceptive trade practices" statutes (*e.g.,* Tex. Educ. Code § 61.320 ("Application of Deceptive Trade Practices Act") and § 61.321 ("Information Provided to Protect Public from Fraudulent, Substandard, or Fictitious Degrees; furthermore, as part of the declaratory relief which ICRGS seeks, herein, ICRGS requests a judicial declaration

construing Texas Education Code § 1.001(a) that substantially provides the following: "Notwithstanding Subsection 61.303(d) or any other part of the Texas Education Code, a private educational institution (including a non-profit entity's separate degree-granting program "school" or "unit" or "college" or "institute") is exempt from Texas Higher Education Coordinating Board oversight if: (1) it accepts no state government funding; (2) it is formed as or is part of a not-for-profit entity, whether incorporated or otherwise; and (3) it is not operated as a degree mill (or an equivalent exemption declaration); and

C.   Texas state law-grounded relief, e.g.,  under Tex. Civ. Prac. & Rems. Code, § 106 **("Discrimination Because of Race, Religion, Color, Sex, or National Origin"),** and/or under the **Texas Religious Freedom Restoration Act of 1999,** codified at Tex. Civ. Prac. & Rems. Code, § 110.001 *et seq.,* and/or under § **1.001(a)** of the **Texas Education Code,** supported by appropriate injunctive and/or declaratory remedies beneficial to ICRGS,  including but not necessarily limited to: (1) an injunction ordering the defendants to issue ICRGS appropriate approval and licensing (i.e., a Certificate of Authority);  and/or (2) a letter ruling from THECB (or a judicial decree equivalent, issued by this honorable Court), interpretively applying **Texas Education Code § 1.001(a)** (using a "duty-to-save" construction) and/or recently amended THECB Rule § 7.4(g), to declare that THECB has no jurisdictional oversight over ICRGS's *M.S.* program; and

D.   Costs of Court, as allowed in conjunction with the injunctive relief-related statutes mentioned above (e.g., 42 U.S.C. § 1983); and

E.   Other Forms of Relief, including a reasonable Attorney's Fee recovery (including litigation expenses awardable in conjunction with attorney's fees), as allowed under 42 U.S.C. § 1988, and/or in conjunction with declaratory relief awarded under 28 U.S.C. §

2201, and/or in conjunction with any state law-based grounds for attorney's fees

(pursuant to Tex. Civ. Prac. & Rems. Code § 105.002 and/or § 106.002(b) and/or §

110.005(a)(4)), and/or other forms of relief as to which this plaintiff may be justly

entitled, at law or in equity or otherwise.

Respectfully submitted,

*James JS Johnson*

James J. S. Johnson, Esq.
Texas Bar # 10741520
Special counsel, **ICR Graduate School**,
an unincorporated educational ministry unit of
**THE INSTITUTE FOR CREATION RESEARCH**
1806 Royal Lane, Dallas, Texas 75229
214-615-8314 telephone;  214-615-8299 FAX
Email: jjohnson@icr.org

Co-Counsel:
John A. Eidsmoe, Esq.
Iowa Bar # AT0002315
**FOUNDATION FOR MORAL LAW**
One Dexter Avenue, Montgomery, AL 36014
334-324-1245 telephone;  334-262-1708 FAX;  email: eidsmoeja@juno.com

## CERTIFICATE  REGARDING  SERVICE

I hereby certify that on the 5th day of August, A.D. 2009, I electronically filed the foregoing
with the Clerk of Court using the CM/ECF system, which will automatically send notification of
such filing to the following attorney (and thereby to the Texas Attorney General's Office):

**Shelley Dahlberg, Esq.,** *Attorney of record for Defendants*
Assistant Attorney General,  General Litigation Division
P.O. Box 12548, Capitol Station,  Austin, Texas 78711-2548

*James JS Johnson*

Certifying attorney for plaintiff